```
 1                IN THE DISTRICT COURT OF THE UNITED STATES
                      DISTRICT OF SOUTH CAROLINA
 2                        CHARLESTON DIVISION

 3     ROBERT J. NAGY,              )
       YURI DEBEVC,                 )           2:08-CV-2555
 4                                  )
                       Plaintiffs   )           Charleston,
 5                                  )           South Carolina
       VS                           )           June 17, 2010
 6                                  )
       UNITED STATES OF AMERICA,    )
 7                                  )
       Defendant                    )
 8
                      TRANSCRIPT OF PRETRIAL HEARING
 9              BEFORE THE HONORABLE DAVID C. NORTON,
                  CHIEF UNITED STATES DISTRICT JUDGE
10
       APPEARANCES:
11
       For the Defendant:     MR. NATHAN CLUKEY
12                            MR. GREGORY SEADOR
                              MS. ELLEN WEIS
13                            US Department of Justice Tax Division
                              P.O. Box 7238
14                            Ben Franklin Station
                              Washington, DC 20044
15

16
       For the Plaintiff:     MR. LINDSEY W. COOPER, JR., ESQ.
17                            LW Cooper Jr. Law Offices
                              36 Broad Street
18                            Charleston, SC 29401

19                            MR. YURI DEBEVC
                              Appearing pro se
20

21

22

23     Court Reporter:        Amy C. Diaz, RPR, CRR
                              P.O. Box 835
24                            Charleston, SC 29402

25            Proceedings recorded by mechanical shorthand,
       Transcript produced by computer-aided transcription.
```

1                    THE COURT:  Okay.  I'm ready when y'all are.

2                    MR. COOPER:  Thank you, Your Honor, Lindsey Cooper

3       for Robert J. Nagy.

4                    THE COURT:  Uh-huh.

5                    MR. DEBEVC:  Yuri Debevc, pro se.

6                    MR. CLUKEY:  Nathan Clukey for the United States.

7                    MR. SEADOR: Greg Seador for the United States.

8                    MS. WEIS:  Ellen Weis for the United States.

9                    THE COURT:  Okay.  All right.

10                   So we've got a couple of motions in limine, and

11      we've got the Motion to Bifurcate.

12                   And so who filed first?  I guess it looks like the

13      first one filed is -- unless you -- unless y'all have an

14      organized way to proceed, I'll be glad to do it anyway.

15      I'm -- all right.

16                   The United States's third motion in limine to

17      exclude Nagy's witnesses John Kern and Ben LeClercq, I think

18      has been partially satisfied, because Ben LeClercq is not

19      going to testify.  So it's just John Kern.

20                   All right.  Yes, ma'am?

21                   MS. WEIS:  Your Honor, we filed this motion because

22      seeing as John Kern, who you may be familiar with, is an

23      attorney who provided litigation counsel to Derivium Capital,

24      Veridia Solutions, Yuri Debevc, Charles Cathcart, and also in

25      connection with litigation arising out of the 90% Loan

1    scheme, we understood Mr. Kern's role to be exclusively an

2    attorney for the parties in those lawsuits.  We did not

3    understand him to have any personal knowledge or to be a

4    pertinent witness in any regard.

5         However, Mr. Nagy has had -- we have -- there was

6    substantial justification for him not to disclose Mr. Kern as

7    a witness until a few weeks ago in his trial witness

8    disclosures.

9         THE COURT:  So that was my question.  He was not

10   initially identified as a witness in any answers to

11   interrogatories or anything until very recently?

12        MS. WEIS:  Correct.

13        THE COURT:  He was not listed somewhere and nobody

14   paid attention to it; he was just not identified, period.

15   Okay.

16        MS. WEIS:  Mr. Nagy has identified two reasons for

17   this.

18        One, because he may not actually call Mr. Kern, but

19   that is not a reason or an exception to the Rule 26

20   disclosure requirements.

21        And two, because Mr. Kern is mentioned in one of the

22   many, many depositions that have been taken in many of the

23   various actions that arose here.

24        Now, that alone is not enough to justify failing to

25   disclose him as a potential witness.  And we cite at least

1    one case in the Fourth Circuit, which is *Quesenberry*, which

2    is a Western District of Virginia case from April of this

3    year, that said that the mere fact that a witness's name

4    appears in documents that were produced during discovery is

5    not sufficient to put the other parties on notice that he

6    might have discoverable information or be a potential

7    witness.

8         Moreover, the way in which it was described in the

9    Scrantom deposition, which is the deposition that Mr. Nagy

10    references, is simply that, again, he was litigation counsel,

11    and that anyone at the firm that he was a member of, 10 State

12    Street, had no personal knowledge of the two subjects that he

13    has been identified as being able to offer testimony on as a

14    fact witness.

15         Now, under *Southern States*, which is a Fourth

16    Circuit case from 2003, the Court has to look at a variety of

17    factors in determining whether or not there was substantial

18    justification or harm to the Government here.

19         And that's important to consider because as THE

20    Fourth Circuit says in *Southern States*, the purpose of Rule

21    37 is to prevent prejudice or surprise to the party to whom

22    the disclosures were made.

23         In this case, Mr. Nagy bears the burden of proof on

24    showing why his witness should not be disclosed or should not

25    be excluded.

1           Now, we would say that there is substantial harm to
2   the Government here.  The centrality of the two issues that
3   Mr. Kern is going to be called to testify on, whether or not
4   there was the systems of hedging and whether or not there was
5   an assistance of a bona fide lender, were heavily litigated
6   during discovery.  We went to, as we mentioned in our brief,
7   Hong Kong and Isle of Man.  We have acquired witnesses on
8   this and deposed many witnesses, including Mr. Nagy himself,
9   who rents office space with Mr. Kern and knows Mr. Kern
10  before the commencement of this litigation.  But at no point
11  prior to May 20th did Mr. Nagy identify John Kern as a
12  potential witness.
13          Now, the fact that we may be able to cross-examine
14  Mr. Kern, as Mr. Nagy points out, at trial does not cure the
15  prejudice to the United States.  And that is specifically
16  pointed out by the District Court in *Southern States*, and
17  with which was affirmed by the Fourth Circuit in 2003.
18          We also can't cure this prejudice by deposing Mr.
19  Kern.  Because trial is, first of all, scheduled to begin on
20  Monday, we obviously are outside of the discovery period and
21  lack authority to compel his deposition.  And we've attempted
22  to contact him and meet with him to understand what it is he
23  could potentially be testifying to that would be admissible
24  evidence.
25          Mr. Kern has refused to meet with us.  In the one

1    short call that we had with him, he specified that he would

2    be subject to attorney-client privilege, possibly on a number

3    of topics.  And also, the only document -- the only -- the

4    only foundation that he alluded to that he might have, or any

5    testimony that he would give, is that he had seen, you know,

6    documents, is rank hearsay.

7         So we believe that there is nothing that Mr. Kern

8    would testify to that is admissible evidence.

9         Now, Mr. Nagy, in his reply brief, says that he

10   could testify based on, you know, provided admissible

11   testimony because as an attorney for his clients, he

12   conducted due diligence.

13        First of all, that would still seem to indicate that

14   there is privilege concerns that we have no indication there

15   has been a waiver of.

16        And second, due diligence would necessarily consist

17   of speaking to other people, which would be hearsay, and

18   viewing documents, which is again hearsay.

19        So we don't believe that, you know, even if Mr. Kern

20   were to testify, he would be offering any sort of admissible

21   evidence.

22        It's also concerning that he's going to be relying,

23   we believe, on documents and testifying from those documents,

24   because that's the nature of expert testimony.  And that only

25   serves to underscore the prejudice to the Government from the

1    fact that this was not -- Mr. Kern was not disclosed until a

2    few weeks ago.

3             So in sum, looking at, you know, the extent of what

4    is unknown about Mr. Kern, the fact that what he's going to

5    offer as testimony, as far as we know, is hearsay, that we

6    were not put on notice that he might be a potential witness

7    until May 20th, the fact that he is litigation counsel,

8    should no more put us on notice to saying that Mr. Cooper

9    himself might be a potential witness.

10            And there is simply no, as far as we can tell, way

11   in which the Court can accommodate this late disclosure

12   without severely disrupting trial.

13            And on that last point, that I would point out that

14   in addition to meeting to depose Mr. Kern, we would also need

15   to voir dire the jury panel that's been panelled, because as

16   an attorney who has been practicing in Charleston for several

17   years, as far as we know, it is more likely than not that

18   there is the potential that a witness or a -- I'm sorry --

19   that a juror has some sort of contact with Mr. Kern.

20            And we would like the opportunity, at a minimum, to

21   identify any potential harm there, as well.

22            THE COURT:  Okay.  Thank you.

23            Yes, sir?

24            MR. COOPER:  Your Honor, he is on the witness list.

25   I will say that he was not in the 21(a) disclosures or any

1    other discovery.

2         THE COURT:  So he was not disclosed at all until May

3    the 20th of this year?

4         MR. COOPER:  Well, I -- in my responses to written

5    discovery, yes, Your Honor.

6         THE COURT:  Okay.

7         MR. COOPER:  Under 26(e), though, the

8    supplementation is and the meaning of the Rule is you don't

9    have to constantly keep on supplementing written discovery,

10   you do the best you can at the time.

11        I came to learn, and they are very aware of the

12   arbitration awards, Mr. Kern's role.  He's been discussed in

13   the deposition they talked about.  I don't believe there is

14   any surprise.

15        They traveled to the Isle of Man and Hong Kong,

16   which would just suggest that they should have stuck a little

17   bit closer to home.

18        THE COURT:  Why would you stick closer to home when

19   you didn't list him as a witness?  I mean, there is tens of

20   thousands of documents in here.  There is hundreds of people

21   in here.  I mean, you could make the same argument for that

22   guy from Lichtenstein.  I mean, he's mentioned in the

23   documents.  Are you going to call him?  I mean, this is not

24   like it's about six witnesses.  There are hundreds of

25   witnesses in this trial.

1          MR. COOPER:  I understand.  And this is a large

2     case.  And you are very aware of the largeness of it.  And

3     that's another reason for picking through discovery as

4     discovery becomes available and known, that's the purpose of

5     the Rule.

6          THE COURT:  Now you are not telling me that John

7     Kern's name wasn't known to you two years ago?

8          MR. COOPER:  It was known, um, I didn't know exactly

9     what his role was.

10          THE COURT:  Did you sit through this month trial

11     that I had in the same case last year?

12          MR. COOPER:  I didn't sit through any of it, Your

13     Honor.

14          THE COURT:  You are lucky.

15          Isn't he, Mr. Debevc?  He's lucky he didn't sit

16     through it.

17          MR. DEBEVC:  Yes, he is, Your Honor.

18          THE COURT:  Okay.

19          MR. COOPER:  And I know that the Justice Department

20     was there.

21          I don't know if he was disclosed or not, but Mr.

22     Kern, it's very important to our case, is the Government said

23     there was these false statements about hedging, and the

24     individuals that were involved at Derivium were all told that

25     they were hedging.

1          Mr. Kern is a lawyer, you know, sat next to Mr.

2     Cathcart.  He couldn't allow untruthful testimony to occur.

3     And his understanding that there was the synthetic puts and

4     calls, that's all he's going to testify to.  No surprise.

5     Five minutes of testimony.

6          THE COURT:  Okay.  And he wasn't -- he wasn't read

7     off as a witness at the voir dire of the jury in the jury

8     selection?

9          MR. COOPER:  My recollection is no, Your Honor.

10          THE COURT:  Okay.  All right.  Anything else, Ms.

11    Weis?

12          MS. WEIS:  No, Your Honor.

13          THE COURT:  Okay.  All right.

14          Next one is Mr. Nagy's motion to strike Government

15    Witnesses Robert Gee and Evan Cohen.

16          Yes, sir?

17          MR. COOPER:  Yes, Your Honor.

18          Basically for the same reasons the Government's

19    going to argue about looking behind the 6700 assessment for

20    the reasons that are listed behind Mr. Gee about talking

21    about the 6700 assessment in the investigation we sought to

22    exclude for those exact same reasons.

23          My understanding from the brief is that it is likely

24    not at issue because of your ruling, but it's those reasons,

25    the actual investigation of the 6700 and the assessment is

1    not at issue.

2              I think what's more troubling is they've listed him

3    to come testify and authenticate IRS transcripts from Mr.

4    Nagy.  Mr. Nagy did not file tax returns, I believe, from

5    2003 to 2005.

6              And I think this was brought out before Your Honor

7    in the Derivium matter about whether that could be brought

8    into attack, Mr. Nagy's character.

9              And that is another reason that we are seeking to

10   exclude him is Mr. Nagy not filing tax returns has no bearing

11   on the tax advice that he gave to his client Derivium, as to

12   his opinion whether it was a sale for federal income tax

13   purposes.

14             And the second reason for looking to strike Mr. Gee

15   is because of the prejudicial nature.

16             THE COURT:  So you are not moving to strike these

17   witnesses because they were not identified to you in a timely

18   manner?

19             MR. COOPER:  Thank you for reminding me.  That's

20   Mr. Cohen.

21             MR. CLUKEY:  Your Honor, can we address Mr. Gee

22   first and move on to Mr. Cohen?

23             THE COURT:  So Mr. Gee was identified during the

24   discovery period?

25             MR. COOPER:  I tried to take his deposition, Judge

1    Carr told me no, and you affirmed Judge Carr.  So I don't see

2    how he could come testify now.

3         MR. CLUKEY:  Your Honor, if I may address --

4         THE COURT:  Sure.

5         MR. CLUKEY:  We identified -- Mr. Cooper is

6    correct -- we identified Robert Gee initially to be able to

7    rebut testimony that would come in regarding the 6700

8    investigation.  You overruled that.  Information wasn't

9    communicated that shouldn't come in.

10        Now to the extent that they opened the door in any

11   sense, we would, of course, preserve our right to call him in

12   rebuttal, if that testimony is put squarely in the issue.

13        THE COURT:  So he's not going to be a part of your

14   case in chief?

15        MR. CLUKEY:  He's not part of our case in chief, no,

16   Your Honor.

17        Secondly, on this issue of the tax returns, the

18   issue here in this case is materially different than what

19   happened from what took place in the bankruptcy action, Your

20   Honor.

21        This is a case about scienter.

22        THE COURT:  Now, when you talk about the bankruptcy

23   action, what are you talking about?

24        MR. CLUKEY:  I'm sorry.  The camel versus cat.

25        THE COURT:  You are talking about the trial?

1          MR. CLUKEY:  Right.  The trial.  And Mr. Nagy was a

2     witness there.

3          My understanding -- I didn't -- I wasn't a party to

4     this, but my understanding was that they tried to get in --

5     somebody tried to get in some -- the fact that he failed to

6     file taxes.

7          This case is Mr. Nagy's scienter and his compliance

8     with the tax laws under 6700.  Obviously, there is a scienter

9     element, and that is the main issue that we are required to

10    prove right now.

11         There is a case by the Supreme Court, 1985, *U.S. vs.*

12    *Boyle*, and that's -- this is cited in our brief -- and the

13    case stands for the unremarkable proposition that everybody

14    knows you have to file your own tax returns and you've got to

15    pay your taxes on time when they are due.  So this is

16    something that everybody knows.

17         Mr. Nagy, at the same time that he was providing tax

18    advice, supposedly objective tax advice to Derivium Capital,

19    and he claims that he did not know that the 90% Loan Program

20    violated the tax laws, at the same time he's providing this

21    tax advice, he's failing to comply with the most basic of

22    federal law concerning taxes, he's failing to both file his

23    tax returns and is failing to pay his taxes.  This is

24    directly relevant to what he knew or had reason to know

25    concerning the tax laws.

```
 1              There are Fourth Circuit decisions we've cited,

 2       there are a number of them, we cited two in our briefs that

 3       have said the Court may consider -- juries may consider

 4       evidence of someone's failure to file tax returns or failure

 5       to pay their taxes in nontax cases where that could shed some

 6       light on the -- on, um, circumstantial evidence.

 7              For example, in drug cases, we cite a drug case

 8       where that testimony was allowed to show that a person

 9       participating in a drug conspiracy, by failing to file their

10       tax returns, which reflects the money that they were earning

11       at the time.

12              So 404(b) --

13              THE COURT:  Isn't there a difference between failing

14       to file income taxes and failing to pay income taxes?  The

15       failure to file them is a criminal act; failure to pay is a

16       civil act?

17              MR. CLUKEY:  Failure to file can be a criminal act,

18       as long as there is taxes that are due.  Otherwise, it's

19       simply a civil violation.

20              So for --

21              THE COURT:  There is no debtors prison.  They are

22       not going to send you to jail for not paying your taxes, it

23       just goes to another part of the facts during the trial?

24              MR. CLUKEY:  If you fail to pay your taxes, you can

25       be enforced in the civil side.
```

1           There could be, depending on the circumstances --

2     there is all kinds of factors on the criminal side.  On the

3     civil side, it's an obvious -- it's a law that everyone knows

4     that you have to comply with that.

5           404(b) permits evidence to show absence of mistake,

6     motive, intent, knowledge.  And so we would be offering this

7     evidence to show exactly that.

8           In addition, because this is a tax case, it's even

9     more -- this evidence is even more -- and it's a tax case

10    about Mr. Nagy's compliance with the tax laws, his failure to

11    file and comply with these most basic elements is even more

12    relevant than it would be, say, in a drug conspiracy case.

13          Thank you, Your Honor.

14          THE COURT:  Okay.  Thank you.

15          Yes, sir?

16          MR. COOPER:  Your Honor, I think your point is

17    correct, is you view it from how the jury will view it.  It

18    may be interpreted as being a criminal act.  I mean, that is

19    highly prejudicial.

20          Here, the Government is citing these criminal cases,

21    but we have a tax case, and we are talking about him not

22    filing tax returns.  And it is highly prejudicial.  It seems

23    like the Government is not focusing on what the Statute is

24    about.

25          The Statute is whether or not those documents,

1    Exhibits 39 through 51 of our trial list, his written tax

2    advice, contained a statement that he knew or had reason to

3    know it was false.

4         And by trying him on these tax returns is just

5    prejudicial.  It has nothing to do with the basis and the

6    foundation of his advice.  And just -- the prejudicial nature

7    is outweighed by any benefit that would bring to the trial.

8         MR. CLUKEY:  Your Honor, if I may clarify?

9         THE COURT:  Sure.

10        MR. CLUKEY:  *Boyle*, the Supreme Court case, says

11   everyone knows you've got to file.  That's a civil case.  So

12   we don't need any -- we are not trying to inflame the jury

13   and say this was a criminal violation; we are simply talking

14   about the civil obligation that every person knows that you

15   have to do this.  So that's really what we are dealing with.

16        Secondly, I believe Mr. Cooper is misrepresenting

17   what may be shown under the Statute, and the relevant

18   evidence under the Statute.

19        We had this conversation the last time we were here.

20   Actually, that we were talking about underlying facts that

21   may be shown in connection, the case is not limited solely to

22   the words in Mr. Nagy's tax advice.

23        And in fact, you ruled in connection with Dr.

24   Pfleiderer, that Mr. Pfleiderer may present evidence as to

25   what a hedge is and that false statements were made in

1    connection with the hedge in connection with the motion in

2    limine to exclude him.

3         So I think we've already covered that ground, that

4    it's broader than it's being represented right now by Mr.

5    Cooper.

6         And this evidence clearly, the fact that he was

7    violating the tax laws, civil tax laws at the same time he

8    was providing supposed objective tax advice to Derivium, and

9    his claim that he didn't know that it was illegal, is

10   relevant and not prejudicial, as those Fourth Circuit

11   decisions also dealt with the prejudice issue.

12        THE COURT:  So you are not going to couch his

13   failure to file his income tax as a criminal matter, it's

14   just he has a duty to file and he didn't file?

15        MR. CLUKEY:  Everyone knows that civil law requires

16   you to do this, and we would be happy to limit it to that.

17   Absolutely, Your Honor.

18        THE COURT:  All right.

19        MR. COOPER:  Your Honor, I mean, I just -- excuse

20   me, but for whatever reason, the Government lawyers who

21   represent the IRS are treating the Statute as a broad fraud

22   statute.

23        And if you read 6700, it has to be a statement about

24   the excludability of income, the ability to take a deduction

25   or any other tax matter.

1           So when you read those cases that he talks about,

2    the fact, that fact, that was false had a direct impact on

3    the tax benefit, inflated basis, to have false fair market

4    value for depreciation.

5           The fact of a tax return has nothing to do with loan

6    or sale.  And it's much more narrow.

7           You look through their exhibits, it's like we are

8    trying the Derivium trial again.  They represent the IRS.

9    It's about tax advice.

10          And I just can't say that enough.  I feel like I'm

11   sitting here in a general bad acts case, or whatever you want

12   to talk about it.  This is about tax advice and the Statute

13   is narrow to that.  And I believe the case law is narrow on

14   what facts are relevant.

15         THE COURT:  Okay.

16         MR. CLUKEY:  Your Honor, the Statute says know or

17   reason to know.  So this is directly relevant to whether he

18   had reason to know the statements he was making were false.

19        Secondly, to address -- this Court has already ruled

20   that false statements were made.  Mr. Nagy said this program

21   was a loan.  It was not a loan, as the Court's ruled, it was

22   a sale.

23        Other facts that are relevant to whether this was a

24   loan or a sale, those are -- and if there are false

25   statements in connection with those, obviously those are

1   relevant, too.

2          So that's why, Your Honor, when you ruled that

3   information can come in on -- that an expert can testify

4   about what a hedge is and the fact that there was no hedge,

5   it's obviously relevant to whether there was a loan.

6          In fact, Mr. Nagy, in his own deposition, testified

7   that if there was no hedge, this could not work under the tax

8   laws, it's an admission by Mr. Nagy.  So obviously, these

9   facts are relevant.

10          There is a case called *Music Masters*.  *Music

11   Masters*.  It's a District Court case affirmed by the Fourth

12   Circuit.

13          And one of the false statements in there is about

14   production materials and whether the underlying recordings

15   even existed.  So those aren't even made.

16          So that was a false statement that was made

17   concerning a fundamental aspect.  If that didn't exist, the

18   tax advice that was given couldn't be true.

19          So all of this goes to somebody that knew or had

20   reason to know.  If there are a number of statements that

21   they knew were false, that goes to whether they knew or had

22   reason to know the tax advice given was false.

23          THE COURT:  Okay.  Thanks.

24          How about Mr. Cohen?

25          MR. COOPER:  Your Honor, it's relatively simple.

1    The cutoff was July of '09.  He was disclosed, I believe,

2    sometime in October or November of '09.  He's from the

3    Brattle Group, it's a well-known litigation support group.

4    He's an expert coming in to produce documents that wasn't

5    disclosed during discovery.

6         MR. CLUKEY:  Your Honor, this Fourth Circuit

7    decision we cite in our brief, it's *United States vs. Dukes*,

8    that's a 2007 decision.

9         There, it was a -- the case involved criminal mail

10   fraud.  And the relevant issue there, there were summary

11   records, bank records that were made, summaries.

12        First, before I get along any farther, let me say,

13   first of all, Evan Cohen is not going to testify as an

14   expert.  He is simply a summary witness.  He's only being

15   offered as a summary witness.  He will not present any expert

16   testimony.

17        But this case in *Dukes*, the Government disclosed

18   weeks -- just a few weeks before trial, they disclosed the

19   existence of a person who was going to testify about the

20   summary exhibits.  And then they prepared the summary

21   exhibits and produced those five days before trial.  They

22   also prepared summary exhibits as the trial was going along

23   and produced those during trial.

24        In that case, where it was actually a criminal

25   matter where the stakes were even more severe, the Fourth

1    Circuit said that that was not -- that that was acceptable,

2    that wasn't, um, those summaries would not be excluded.

3            In our case, we -- Evan Cohen was disclosed six

4    months ago; not weeks ago.  He was disclosed six months ago.

5    He will not testify as a fact witness.  He will not testify

6    as an expert witness, simply as a summary witness.

7            Secondly, the documents that he's testifying, that

8    he's summarizing, were produced to Mr. Cooper, or to Mr. Nagy

9    during the discovery period more than a year ago.  Some of

10   the documents he's summarizing were actually Mr. Nagy's own

11   billing records which were produced to us, and then the

12   summaries were produced more than two months ago.

13           So under this authority of *Dukes*, these should not

14   be excluded.  They were provided in plenty of time, and there

15   is plenty of time for -- for Mr. Cooper to look at the

16   records, prepare his own summaries.

17           THE COURT:  All right.

18           Yes, sir?

19           MR. CLUKEY:  I'm sorry.  And he has done that,

20   actually.

21           THE COURT:  Okay.

22           MR. CLUKEY:  Thank you.  So it's not an expert

23   witness, but --

24           MR. COOPER:  Nothing comes to mind, Your Honor.

25   Maybe they'll trade with me, Cohen for Kern.

 1          MR. CLUKEY:  No chance.

 2          THE COURT:  Thank you for your candor.

 3          All right.  I think the last one -- and there may be

 4   some other ones we need to talk about -- is the renewed

 5   Motion to Bifurcate.

 6          MR. COOPER:  Yes, Your Honor.

 7          I'm just again going to plead with the Court to

 8   bifurcate this court -- matter.

 9          I think one of the problems we've seen is the

10   objections to the hearing transcripts.  They are looking to

11   introduce testimony from the Derivium trial that was before

12   Your Honor.  Mr. Nagy was not a party to that, so it's

13   hearsay under the Rules.

14          And the prejudice that would cause -- and if you --

15   if you look through the exhibits, that Mr. Debevc's role was

16   completely different.

17          And I think Your Honor's comments, too, were rather

18   enlightening in the other hearing saying, you know, Mr.

19   Debevc was someone totally different than Mr. Nagy in the

20   underlying facts in what they did.  And it just causes

21   confusion in fact.

22          I think if you tried Mr. Nagy's case without Mr.

23   Debevc, it would probably reduce the Government's 350

24   exhibits to something far less.

25          So we would ask that you bifurcate the trial, on top

1    of Mr. Nagy being in trial with a person that is -- was an

2    owner from Derivium and had a whole different set of

3    knowledge than Mr. Nagy.

4         THE COURT:  Who do you want to go first?

5         MR. COOPER:  Your Honor, I'll go first.

6         THE COURT:  I just wanted to let you know, I didn't

7    know whether you were throwing Mr. Debevc under the bus or

8    you were going to go under the bus first.

9         MR. COOPER:  If he wanted to go first, he can go

10   first.  We'll draw straws.

11        THE COURT:  What a gentleman.

12        Yes, sir?

13        MR. CLUKEY:  Mr. Cooper raises a fair point.  We

14   offered a single witness who only goes to Mr. Debevc, that is

15   true, 16 witnesses go to both.

16        So we have a witness, Laura Harrison, we had hoped

17   that she might be able to actually come and testify at trial,

18   but she's due -- she's pregnant and she's due now, and so she

19   couldn't -- she can't make it.

20        THE COURT:  Is she from Jackson Hole?

21        MR. CLUKEY:  Yes.  And she did testify in Campbell,

22   in the Campbell case.

23        And we believe that that testimony would be

24   admissible, and we'll seek to admit it against Mr. Debevc.

25        We understand if Mr. Nagy would like a limiting

1     instruction as to him, it doesn't pertain to him whatsoever,

2     but the rest of the 16 witnesses address facts we believe

3     both Mr. Nagy and Mr. Debevc were aware of and knew.

4          And Your Honor, the -- the only thing I would say is

5     you've already ruled on this motion twice.  We don't believe

6     any other facts have changed in this case.

7          THE COURT:  Okay.  What do you think, Mr. Debevc?

8          MR. DEBEVC:  Your Honor, I did not file a brief on

9     this, but I do respond to the opinion which was expressed

10    earlier for severance of this trial.  Because in fact, we are

11    two different people.

12         On one hand, Mr. Nagy is a professional that

13    generated tax opinion.  On the other hand, I was the end user

14    of those tax opinions, or those briefs or memoranda.

15         And to suggest by any special imagination that I

16    have intimate knowledge of tax matters as, with my limited

17    education, I think that is really going -- um, that's

18    stretching the imagination.  And again, I feel that myself

19    being, again, thrown under the bus, as you so eloquently

20    said.

21         So I think I would be in favor of separating the two

22    trials because the -- as I think the evidence has shown, and

23    discovery has shown to this point, that the fact that the two

24    cases are dissimilar.  And I know that some of them, but the

25    two cases are dissimilar, one being the end user of the tax

1     memoranda, which is by professionals, and the actual entity

2     that produced this tax professional in-depth field.

3               THE COURT:  Okay.  Thank you.  Anything else?

4               MR. CLUKEY:  No, Your Honor.

5               MR. COOPER:  There was two other.  Don Hancock is

6     also the trial testimony.

7               MR. CLUKEY:  Your Honor, we've withdrawn that.  We

8     are not going to offer any testimony from Hancock.

9               MR. COOPER:  What about Mr. Scrantom?  He also --

10     they tried to take him in Nagy's injunction case in

11     California, realizing that they couldn't use his deposition

12     testimony in the bankruptcy matter.  That deposition was

13     never completed.  So they are using Mr. Scrantom's testimony.

14     It's also -- Mr. Nagy didn't have the opportunity to cross or

15     develop examination in that, as well.

16               MR. CLUKEY:  Actually, Your Honor, Mr. Nagy's

17     counsel, Fleet Freeman, attended the entirety of that

18     deposition.

19               So Mr. Nagy was actually represented.  He was being

20     sued by the Trustee at that time for another cause of action.

21     So his attorney did show up and is on the record in that

22     deposition, and we can show that.

23               MR. COOPER:  Well, but he -- it wasn't his case.  He

24     wasn't able to cross-exam.  And I can bring in Fleet Freeman

25     to that extent, but the testimony was not developed in that

1     case because, as he pointed out, Mr. Nagy was in a different

2     lawsuit.

3          THE COURT:  All right.  Where is Mr. Scrantom

4     nowadays?

5          MR. CLUKEY:  He's in New York, London and Wyoming,

6     my understanding.

7          THE COURT:  Undisclosed location.

8          MR. CLUKEY:  That's right.

9          THE COURT:  Okay.  All right.  Anything else?

10          MR. CLUKEY:  Yes, Your Honor.  There are a number of

11     pretrial matters that we would like to address.

12          THE COURT:  All right.

13          MR. CLUKEY:  If that's okay.

14          THE COURT:  Shoot.  Why don't we address who is

15     going to be first.

16          MR. CLUKEY:  That was our first item.

17          THE COURT:  You both want to go first.  That's

18     impossible.

19          MR. CLUKEY:  Yes, it is, Your Honor.

20          And if I may, I'll give you argument why we think

21     the United States should go first.

22          The United States has the burden of proof as to --

23     as to the 6700 conduct.  And at some point in time -- this is

24     in our pretrial brief, but it might be in the jury

25     instructions, as well -- but there is an issue as to the

1    amount of penalties and who has the burden of proof as to

2    that.

3         The core issues in the case, the United States has

4    to prove that both Mr. Debevc and Mr. Nagy knew or had reason

5    to know that they violated Section 6700.  Because we bear the

6    burden of proof, and we have 17 witnesses who will go on at

7    trial, we believe the United States should go first on that

8    issue.

9         The second thing is, this is a fairly odd statute,

10   in that it provides a mechanism for people who have had

11   penalties asserted against them to not pay the entire

12   penalties, to get into Federal District Court and challenge

13   these penalties, you only have to pay a very small amount, so

14   both Mr. Nagy and Mr. Debevc pay just a couple thousand

15   dollars to get here.

16        The United States is also a counter -- is

17   countersuing them.  So we are a plaintiff in that sense, or a

18   plaintiff for far more.  We are a plaintiff for 2.7 million

19   against Mr. Nagy, and we are a plaintiff against Mr. Debevc

20   for 3.3 million.

21        So given the fact that we are in a plaintiff's

22   posture, given the fact that we have the burden of proof as

23   to most -- as to the most -- the most serious conduct, or the

24   biggest issue before the Court, we believe we should go

25   first.

```
 1              And the last thing I'll say, if we fail to meet our
 2       burden of proof, of course the plaintiffs here could seek for
 3       a directed verdict and save everyone time.
 4              Thank you.
 5              THE COURT:  Yes, sir?
 6              MR. COOPER:  Your Honor, I would -- when I was
 7       looking at this, I looked at Local Rule 83, Roman Numeral
 8       604, and the Local Rule of the Court says:  "In the trial of
 9       a civil action, the plaintiff shall" -- excuse me, my eyes --
10       "shall open and conclude the testimony and the argument."
11              I think the Local Rule says we go first.  We are the
12       plaintiff.  The procedure to get here, I don't think is real
13       relevant.  And in fact, District Court was our only venue.
14       With 6700 penalties, you don't get to go to tax court, you
15       have to come before Your Honor.
16              Mr. Nagy wrote this tax advice and the Court has
17       broad discretion on how to conduct a trial before it.  It's
18       in your courtroom.  We would ask that Mr. Nagy be able to go
19       up first and to explain to the jury why these assessments the
20       IRS made are incorrect.
21              THE COURT:  How is the jury going to understand
22       anything?  I mean, you are trying to prove a negative at that
23       point, aren't you?  I mean, they don't know anything about
24       anything.  I mean, they don't know what a 6700 penalty is.
25       They don't know nothing.
```

1           MR. COOPER:  That's my job in opening statement.

2       That's my job in how I present the evidence to the jury.  And

3       it's my job to make them understand that Mr. Nagy gave advice

4       he believed was very good.

5           On top of it, we do have two scheduling issues,

6       Mr. Brandenburg, we've had a subpoena on him, has scheduled a

7       family trip with his family that Friday, the date alludes me,

8       I think it's the 22nd through that next Tuesday.  So we would

9       want to go first and get him in.  And also Mr. Kern is

10      scheduled to be in Italy the first Monday.

11          So in order to conduct a trial, we would ask you to

12      take that into consideration, too.  But we don't believe it's

13      proving a negative; we believe it's proving that he believed

14      this tax advice.

15          MR. DEBEVC:  If I may, something from just a common

16      sense perspective.

17          I think, just generally speaking, I understood when

18      people go to court, it's the United States Government, the

19      assumption is it's the United States Government that brought

20      the action against the individuals.

21          In this particular case, we the individuals brought

22      the suit against the Government for not following their own

23      rules.  And this trial is the evidence, from being something

24      of that the United States Government could take a look at the

25      Complaint that I filed, it was that the Government did not

1    follow its own written rules.  And that was the only venue

2    for open to be challenged at was the Federal Court.

3            It now seems that the tables have been turned.  That

4    the United States is, for all intents and purposes, retrying

5    this case, whether the 90% Stock Loan Transaction was a sale,

6    was a loan, it's what made it into a tax matter, which I

7    think that -- I think the -- that's why I think it would be

8    important that we go first and lay the groundwork for the

9    jury as to how we find ourselves in this position to begin

10   with.

11           THE COURT:  Okay.  Thank you.

12           Yes?

13           MR. CLUKEY:  Your Honor, Mr. Cooper said you have

14   discretion, obviously.  Not withstanding the Local Rule,

15   Fourth Circuit case law confirms that discretion.

16           And we believe it's just -- it makes a lot more

17   sense to have the Government go for the reasons I already

18   stated.

19           But just for the record, we have scheduling issues,

20   as well.  We have scheduled every single one of our witnesses

21   to be here on time.  Our first witness has a number of

22   scheduling issues, and there is only a single day that he can

23   come, and we are having him the first person.  He's opening,

24   going on that day.  And our expert, Dr. Pfleiderer, has quite

25   a number of conflicts.

1          So whoever goes first, whoever doesn't go first, is

2    obviously going to have some issues with scheduling.

3          Thank you.

4          THE COURT:  It sounds to me like Mr. Cooper's

5    witnesses have scheduling -- more scheduling problems if he

6    goes second than if he goes first.

7          You are saying your man's got a problem, has to

8    testify on Friday, or he's going to be out of town Friday or

9    the next Tuesday or something like that, right?

10          MR. COOPER:  Yes, Your Honor.  Mr. Brandenburg is

11    from Friday until that next Tuesday.

12          THE COURT:  So that's Friday the first week until

13    Tuesday the second week?

14          MR. COOPER:  Yes, Your Honor.

15          And then Mr. Kern, that next month after opening

16    statements, goes to Italy for several months.

17          MR. CLUKEY:  Your Honor, and if I may offer two

18    people?  One, we are -- we've obviously moved to exclude Mr.

19    Kern, so that may be a moot issue.

20          Second, we would -- there is no way that Mr.

21    Brandenburg can testify -- we wouldn't be necessarily averse

22    to having him go in our case in chief, if that was the only

23    accommodation that could be made.

24          And actually, I would like to address one last

25    thing.  Assuming that, Mr. Debevc said a minute ago, and it

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

1    was about what the case is about, to make sure Mr. Debevc

2    understands, he had a second cause of action in this case,

3    but he was alleging the United States had done -- had not

4    followed the rules and not been -- that action was dismissed.

5              Mr. Debevc mentioned this cause of action during

6    voir dire to the jury.  We would like the Court to instruct

7    Mr. Debevc that he cannot mention that to the jury during his

8    opening statement because it is not an issue.

9              THE COURT:  Okay.

10             MR. CLUKEY:  Thank you, Your Honor.

11             THE COURT:  Mr. Debevc, I think they are right on

12   that one, okay?

13             So when and if -- when you get to trial, remember

14   that, okay?

15             MR. DEBEVC:  I'll do my best.

16             THE COURT:  All right.  I know.  All right.

17             MR. DEBEVC:  Your Honor?

18             THE COURT:  Yes.

19             MR. DEBEVC:  May I say something else?

20             The Government has moved to -- actually argued to

21   exclude the testimony through the positionings of Mr.

22   Cathcart and David Lancaster.  Those are my witnesses.  And I

23   believe that they should be included for an assortment of

24   reasons.

25             One, because they are -- the Government argues on

1    one hand that if I knew or had reason to know.  And the

2    testimony in those depositions clearly suggest as to who knew

3    what and when did they know it.

4         And also, that there is a -- also, according to the

5    Rule 803(8) and (14), that -- I think that it is important

6    that that -- those -- that testimony be admitted.

7         MR. CLUKEY:  Your Honor, we refiled an objection to

8    it.  We hadn't moved to limit that, but we certainly filed an

9    objection regarding Mr. Lancaster's testimony.

10        Mr. Lancaster testified in 2004 before a -- the

11   California State Board of Corporations, and the United States

12   did not participate, it was a state action.  The United

13   States was not a participant.  It was before the United

14   States even brought this 6700 action.

15        And at that time in 2004, the full extent of the

16   false statements and fraud by Derivium Capital was not known

17   to anyone.

18        And so Mr. Lancaster's deposition not only did we

19   not have a chance to participate in that, but the facts

20   were -- the facts were materially different and the scope of

21   the fraud, the extent of the fraud, was not known to the

22   world at large at that time.

23        MR. DEBEVC:  Your Honor, I believe that the Statute

24   states that this is a public record.  And the report -- this

25   is a public record in the report.  It was filed in the state

1    court, specifically to Mr. Lancaster's testimony.  So it is

2    available.  It is a public record.

3         Then if nothing else, then it should be -- should be

4    allowed to use his statements to show that, number one, that

5    these statements exist, not necessarily even if it is not for

6    the reasons that the veracity of those statements.  However,

7    this was a deposition taken from the report and it is a

8    public record; and therefore, it should be admitted.

9         The same thing goes for Dr. Cathcart's testimony.

10   They are public records.  And they -- Mr. Lancaster's

11   position as vice president of marketing will shed light on --

12   sheds light on my participation in marketing, which was

13   nonexistent.

14        THE COURT:  All right.

15        MR. CLUKEY:  Your Honor, I don't know what your

16   agenda is as far as going through, but we had a couple of

17   other items.

18        THE COURT:  I'm going to -- first we are going to

19   clear a couple of things up, and then we'll go forward, okay?

20        MR. CLUKEY:  Yes, Your Honor.

21        THE COURT:  I think the Government has the burden of

22   proof.  The Government can go first.

23        The defendant -- now Mr. Cooper, what is your

24   position with regard to the shifting burdens?  You didn't

25   address it in your pretrial brief.  Doesn't the burden shift

1    to you as to the amount of penalties, or are you even going

2    to go there?  I don't know whether you are going to litigate

3    the amount of penalties, or if he's found -- or if that is

4    going to be a subject of the trial, I don't know.

5              MR. COOPER:  The burden on the penalties is, my

6    reading of the Statute, is they have all the burden.

7              I know there is some Second Circuit law that they

8    pointed out that said that it shifted to me.  I think those

9    courts did a little too much slicing and dicing of the

10   Statute.

11             It says that the Government has the burden of proof

12   of liability.  When I read the word "liability," it means

13   you've got to prove they did something wrong.  You've got to

14   prove how much it is.

15             So I would just ask this Court not to follow the

16   Second Circuit on that.

17             So it's my position they have all the burden.

18             THE COURT:  Maybe that's even better because then if

19   they've got the burden of proof about everything, then they

20   ought to be first.

21             MR. CLUKEY:  Your Honor, we believe that the

22   decisions that have concluded that there is this burden

23   shifting are right for this reason: The Government's not in

24   possession.  We don't know how much -- how much money these

25   individuals actually made necessarily in connection with

1    this -- with this scheme.

2         The way the tax law normally works is the -- is that

3    taxpayers have the burden of proof to show how much money

4    they actually owe, which is the the normal burden of proof.

5         This is a special Statute that when you have

6    promoters of a tax scheme, the Government -- the Congress put

7    the burden of proof with respect to the false statements

8    themselves and whether the parties knew, promotors knew or

9    had reason to know these statements were false.  And so

10   that's on the Government.  And that's clearly in the Statute

11   and that makes sense.

12        As far as the penalty amount -- and by the way,

13   those cases are typically litigated in injunction actions,

14   which we did litigate.  There are a whole host of reasons why

15   this case came out the way it did, which I don't have to

16   belabor the Court with.

17        But ordinarily, the taxpayers have the burden of

18   proof to show how much income they are -- those cases that

19   have looked at 6700 and have -- and have actually looked at

20   this issue when it does come, it -- and it doesn't come up

21   that often, but when it does, it says that the burden shifts

22   for that long held rationale, if you make money, it's the

23   taxpayer that controls their own books, they control their

24   own records, they know how much money they have, deductions

25   they have, etcetera.  So that's this long-standing rationale

1    ground for that.

2              THE COURT:  All right.  We'll have to look into the

3    burden shifting because we didn't find anything that you

4    addressed in any pretrial papers.  So we will have to take a

5    look at that, okay?  So I can't make a decision.

6              Assuming that there is burden shifting, okay?  Then

7    first, second, third, and any rerebuttal, which would make it

8    four, if you have something on rebuttal, because we are

9    actually trying two cases perhaps, burden, burden,

10   anti-burden, anti-burden.  Do you see what I mean?

11             Assuming you have the burden to prove the amount of

12   the penalties, then they would rebut what you did and then

13   you would get a chance to reply to their rebuttal if you

14   wanted to, and then -- or until the jury fell out of their

15   chairs asleep, whichever comes first, all right?

16             So if you have the burden because of the burden

17   shifting, then I'll give you a chance to do a reply to their

18   rebuttal, okay?

19             MR. COOPER:  Thank you, Your Honor.  I don't think I

20   have ever filed a sur reply.

21             THE COURT:  There's a first time for everything.

22             MR. COOPER:  Thank you, though.

23             THE COURT:  But we'll have to look.  And if you can

24   find any -- if you can give me some authority about that that

25   you don't have -- I mean, there is a Second Circuit case,

1    which is a circuit court case, which is -- it's the only

2    thing out there, I'll probably follow it.  If there is

3    something else out there that says that's wrong, or something

4    in the Fourth Circuit, I'll take a look at it.  All we've got

5    is the Government's position with regard to the burden shift.

6              MR. COOPER:  I'll try to make your job easy.  I have

7    looked in the Fourth Circuit, I haven't found anything.

8              THE COURT:  You haven't made my job easier.

9              MR. COOPER:  Well, Frank, I'll just ask you to look

10    at the Statute.

11              THE COURT:  So if all we have is a Second Circuit,

12    and the Second Circuit says there is a burden shifting, then

13    you might want to be prepared.

14              MR. COOPER:  Understood.  Thank you.

15              THE COURT:  Okay?  Because they may not be direct

16    bosses, but they are my indirect bosses, who my direct bosses

17    haven't said anything, okay?

18              All right.  I'll look at the 803(8) Mr. Debevc

19    brought up with regard to Mr. Cathcart and Mr. Lancaster's

20    testimony in the State of California, which the Government

21    was not a party to.

22              MR. CLUKEY:  Let me clarify with respect to Mr.

23    Cathcart, Your Honor, he was deposed in this case.  We made

24    some objections to certain, I guess some hearsay and that

25    type of thing.

1          So in case Mr. Debevc was confused, we are not

2     objecting wholesale to the introduction of Dr. Cathcart's

3     testimony; just Mr. Lancaster's.

4          THE COURT:  Okay.

5          All right.  Yes, sir?

6          MR. COOPER:  Just for scheduling purposes, Your

7     Honor, what can I tell Mr. Brandenburg?  Will we try to fit

8     him in, if necessary, if the Government is going to go

9     through Thursday?

10         THE COURT:  Okay.  Well, I have to be in Richmond on

11    Monday, the Chief Judge's conference, so there will be no

12    court Monday.  So he'll be back Tuesday, so it will fit right

13    in, it would seem like to me.

14         MR. COOPER:  Okay.  When you said -- you said you go

15    very fast.  I don't want to get until Tuesday and have it

16    already gone to the jury or something.

17         THE COURT:  No, I won't do that.  You find out what

18    his schedule is.  He's leaving town on Friday or leaving town

19    on Thursday, or what is his --

20         MR. COOPER:  He's available Thursday but not Friday.

21         THE COURT:  Okay.  Then he's available Tuesday?

22         MR. COOPER:  Yes, Your Honor, that's my

23    understanding.

24         THE COURT:  Okay.  And so you've got -- all right.

25    I will not go to the jury without you being able to call him.

1    And it will probably be, more likely than not, from what

2    everybody says, the Government's case is going first, is

3    going to last most of next week, if not all of it.

4             Will he be your first witness or where does he fit

5    in?

6             MR. COOPER:  No, Your Honor.  He's not the first.

7             THE COURT:  So if the Government finished Thursday,

8    you have plenty of things to do Friday, and then you can call

9    him Tuesday.

10            MR. COOPER:  I tend to be more brief, though, so I

11   don't know.

12            THE COURT:  If we have to end up early on Friday,

13   which nobody has ever complained about, especially the jury

14   on Friday afternoon, then we'll just start on Tuesday with

15   him.

16            MR. COOPER:  Thank you for the accommodation.

17            THE COURT:  So more likely than not -- I mean, I

18   don't know, John Kern, assuming he testifies, is gone,

19   leaving --

20            MR. COOPER:  Monday.

21            THE COURT:  This coming Monday, like three days from

22   now, or a week from Monday?

23            MR. COOPER:  Ten days.

24            THE COURT:  So he would be available late next week

25   if you are allowed to call him.

1          MR. COOPER:  Yep, Your Honor, he would.

2          THE COURT:  All right.  Got you.

3          All right.  What else?

4          MR. CLUKEY:  Your Honor, do you have any time limits

5     for opening statement?  I guess we just ask, opening and

6     closing statements, just so we know.

7          THE COURT:  Um, 37 seconds in opening, a minute and

8     a half in closing.  No, I don't --

9          MR. CLUKEY:  What about --

10          THE COURT:  Y'all have tried a lot of cases.  It's

11     them, you know.  I mean, I'm a professional, I can sit here

12     forever, but you know, there is the point of diminishing

13     returns.

14          But also -- but I do have rules that you can't use

15     anything in your opening that you do not know is coming into

16     evidence, so that's --

17          MR. CLUKEY:  That was my next question.

18          THE COURT:  So if it's going to come into evidence

19     and everybody agrees it's going to come into evidence, mark

20     it in evidence and you can use it in your opening.  If there

21     is a dispute about it, you can't use it.

22          MR. CLUKEY:  I presume you can't reference it,

23     either, can't use it, can't reference it?

24          THE COURT:  You know, you take a risk.  I mean, you

25     can if you want to.  If you promise the jury something, that

1     they are going to see X, and X doesn't come in, then that's

2     up to you.  That's your problem; not theirs.  I mean, so --

3     but that's the lawyer's skill.

4               MR. CLUKEY:  Right.

5               Your Honor, we just received another exhibit from

6     Mr. Cooper.  It looks like -- I don't know if -- know if this

7     is right or not, but how I interpret it, it's got the prior

8     penalty amounts.

9               The Government has now conceded one year, the first

10     year that the penalties were assessed in 1997.  We've also

11     recalculated the penalty for the end of 2004 and 2005.  And

12     as it has been ruled on a couple of times, this is a de novo

13     proceeding, and we don't believe the original penalty amount

14     was relevant.

15               The jury is going to be able to calculate the

16     penalty and see what penalty is appropriate here.  And so we

17     are not sure what relevance it would have.  And I'm just

18     teeing it up now in case it comes up during the opening.

19               THE COURT:  I wouldn't refer to it unless you know

20     it's going to come in evidence, and then we can argue whether

21     it's going to come in evidence or not, and you can argue

22     about it in closing when you know whether it's in or out,

23     okay?

24               All right.  Anything else, Mr. Clukey, Mr. --

25               MR. CLUKEY:  Yes, Your Honor.

1          We have as our -- so I -- we have all the exhibits

2     here, and I presume you don't want to go through all of these

3     right now because there are quite a lot of them -- we have

4     sort of a local issue.

5          We are intending to present as our first witness, if

6     we have to do so, Andrea St. Amand.  She is with the law firm

7     of Nelson Mullins.  She oversaw document discovery in the

8     *Campbell* case, and there were a number of 901 authentication

9     objections to documents that we know came from Derivium's

10    files that Mr. Debevc had control over.  So there are quite a

11    few 901 objections, and as well as agents of Derivium, like

12    some of Tim Scrantom's -- a couple of Tim Scrantom's

13    documents, for example.

14         So they are 901 objections.  She's got to come in,

15    and in our view, it's a waste of the jury's time, but we are

16    going to go through the motions, if we have to, to present

17    her to testify how she got all of the documents and where

18    they came from, just as sort of a global authentication

19    witness.

20         We are not sure if that's actually necessary.  And I

21    was actually trying to tee it up with Lindsey Cooper before

22    you came out on the bench.

23              THE COURT:  Okay.

24              MR. COOPER:  I don't quite understand what he's

25    asking.  I'm sorry.

```
 1              MR. CLUKEY:  Is the authentication of these
 2    documents an issue?
 3              MR. COOPER:  Some of them.
 4              There is like some e-mails where you can't tell
 5    where they come from.  And none of the people, my
 6    understanding of, will be testifying at trial to be able to
 7    authenticate them.  So we made the appropriate objection if
 8    we need to.
 9              MR. CLUKEY:  The e-mails came from a Canadian
10    server.  And I know you heard about that during the Campbell
11    case.  It's a server that Derivium Capital purchased in
12    Canada.
13              So those documents would be outside the possession
14    of the U.S.  So Ms. Saint Vincent was in charge, tasked with
15    getting those documents and getting the information on the
16    server.
17              So we'll present her at trial if we have to, but we
18    don't believe it's a valid objection.
19              THE COURT:  I'm not hearing you.  You want Ms. Saint
20    Vincent to come up and authenticate some or all of these
21    documents?
22              MR. COOPER:  Well, if I made an authentication
23    objection, Your Honor, there is -- I suppose I have to think
24    about it because --
25              THE COURT:  I was going to stop you in about
```

1    15 minutes and let y'all talk about it.

2              MR. COOPER:  Okay.

3              THE COURT:  Because I was going to go up and talk to

4    my posse about these other rulings and then we'll come back

5    down and we can take care of the rulings, and you can take

6    care of some of the documents.  It would be an appropriate

7    use of time.

8              And if you've got any documents that are

9    particularly viable that you may want to use in your opening,

10   you can tee it up and see if I can rule on it.  If I can, I

11   will.  If I can't, I won't.  I've got all afternoon.

12             MR. CLUKEY:  Thank you, Your Honor.

13             THE COURT:  The more we do today, the less we have

14   to do early in the morning, okay?

15             All right.  Thank you.  We'll start again -- I'll be

16   up in my office until -- y'all just tell Gail when you are

17   ready and I'll come back down then, okay?

18             (Thereupon, there was a brief recess.)

19             THE COURT:  All right.  I just looked at my schedule

20   now.  If we are productive, you know, I've got all afternoon

21   tomorrow, starting at 10:30 tomorrow morning, if you want to

22   come back and do some of these things, because we have to do

23   them when the jury is not here.  We can do them tomorrow

24   afternoon, we'll do them at 9:00 in the morning, you know,

25   good time to start.  As they say, a journey of a thousand

```
1    miles starts with the first step.  And I'm ready to go
2    whenever y'all are.
3              What's the upshot of the 901 and Saint Vincent and
4    all that?
5              MR. COOPER:  With Saint Vincent, whatever they've
6    explained to me, whatever the Trustee sees in the Derivium
7    warehouses in the Canadian server, we'll agree to the
8    authenticity to all that.
9              THE COURT:  We don't need to call her as a witness?
10             MR. COOPER:  I think there was one in the Isle of
11   Man.
12             MR. CLUKEY:  I thought we -- just the conversation
13   that we just had, I think there were only a few documents
14   from the Isle of Man that we actually want to introduce.  And
15   those documents were actually discussed with deponents in the
16   Isle of Man.  I thought you just said those documents you
17   wouldn't have an authenticity objection.
18             MR. COOPER:  If the witnesses authenticated them,
19   that's fine.
20             THE COURT:  Are y'all using the same videotape
21   depositions or are you using your own?
22             MR. CLUKEY:  Yes, sir.
23             THE COURT:  I remember in the trial, Mr. Debevc can
24   correct me, they had the Isle of Man people on videotape and
25   they used some documents and flashed them back and forth, I
```

1     think.  So if there is no authentication problem with

2     those -- they are I.D., I guess, right?

3               MR. COOPER:  That's correct.

4               THE COURT:  Okay.

5               MR. CLUKEY:  And Your Honor, a related question to

6     that, for the video depositions, how do you deal with the

7     exhibits?  Can the jury see the exhibit while they are

8     testifying on video or how does that --

9               THE COURT:  You mean mechanically?

10              MR. CLUKEY:  Yes.

11              THE COURT:  It's above my pay grade.  I don't think

12    so, no.

13              MS. WEIS:  I think the actual issue is for exhibits

14    that the witness is going to be describing in the video that

15    haven't been admitted into evidence yet, if they are shown in

16    the video, we want to avoid, obviously waiving any

17    publication issues, but we also don't want to keep having to

18    pause the video, unless that's the preference of the Court,

19    to move in the exhibits as they go.

20              THE COURT:  I mean, if Mr. Cooper is satisfied that

21    the documents have been identified by the witness on the

22    videotape, you can go ahead and just mark them into evidence,

23    because -- is that what your understanding is, Mr. Cooper?

24              MR. COOPER:  To move them in above without any

25    objection, yeah.

```
 1              THE COURT:  So you have other objections?

 2              MR. CLUKEY:  To some of the documents, yes, there is

 3     some other objections.

 4              THE COURT:  All right.  So I mean, we can make it

 5     run smoothly.  If you've got those and you want to bring

 6     those in tomorrow, and I can take a look at the, you know,

 7     testimony and rule on your objections, which will make it --

 8     how does that sound?

 9              MR. CLUKEY:  Sounds great.

10              MR. COOPER:  That sounds fine.

11              The one thing is that was a little bit difficult in

12     the documents, I was trying to link them between how they are

13     described in their exhibit list to how they are in the

14     deposition transcripts.  So if the Government could help me

15     out with what exhibits are going to be with what witnesses,

16     that would be much appreciated.

17              THE COURT:  I mean, y'all can meet this afternoon

18     until about 10:30 tomorrow morning and then tee it up after

19     that, and go as far as we can go.  How does that sound?

20              And anything on the other side, too, I don't know

21     your exhibits.  I mean, did they -- do you have an objection

22     to his or we can do that for everybody?

23              MR. COOPER:  Yes, Your Honor.

24              THE COURT:  Yes.

25              MR. DEBEVC:  I'm just standing up.
```

```
 1                    THE COURT:  That's no problem.
 2                    MR. DEBEVC:  I totally forgot.  I was doing this as
 3          a spectator; not a participant.
 4                    THE COURT:  Okay.  That's fine.  No problem.
 5                    Anything else?  Yeah?
 6                    MR. COOPER:  Is it okay if Ms. Van Bavel sits with
 7          me during trial?  She's a paralegal in my office.
 8                    THE COURT:  Sure.  Identify her and let the jury
 9          know who she is, okay?  They might think she's your guardian
10          or something.
11                    MR. COOPER:  I need one.
12                    THE COURT:  I understand that.  Don't we all?  Okay.
13                    MR. CLUKEY:  We have a couple of additional issues.
14                    THE COURT:  Okay.
15                    MR. CLUKEY:  One, we put this in our pretrial brief,
16          Mr. Debevc, in how he testifies.  When he's actually
17          testifying in his case in chief, we requested that he be
18          required to testify in the question and answer format, just
19          so that we can preserve the record and so he doesn't have a
20          long -- and gets into hearsay and we can't object.  I don't
21          know how the preference is for dealing with that.
22                    THE COURT:  Never happened before, um, so -- I
23          actually have had it in a criminal case, a criminal tax case,
24          as a matter of fact, pro se also, all right?
25                    Mr. Debevc, how do you anticipate providing
```

1    testimony to the jury?

2        MR. DEBEVC:  Actually, I was looking to the Court

3    for guidance because I was sort of wondering myself.  Do I

4    ask myself in the mirror, Mr. Debevc, how do you come to

5    this?  I don't know what the protocol is.  And so I was

6    wondering myself, how do I effectively put the information

7    into the hands -- into the Court and to the jury?

8        THE COURT:  Okay.  Perhaps it would be good to sit

9    down and think about an outline of the subjects of which you

10   are going to testify about, okay?

11       MR. DEBEVC:  Yes, sir.

12       THE COURT:  And then provide that outline to the

13   Government and see if they are going to object to any

14   subjects that you are planning on testifying about.

15       And if they are not, then you can tell the jury,

16   this is about this, and this is my testimony about this.  I

17   mean -- because I mean, like the Government pointed out

18   earlier, the thing about the due process and not following --

19   that's not in your case anymore because it was dismissed

20   about a year and a half ago.

21       But if we -- and the reason for that is, is because,

22   you know, it was easier last time because you had your lawyer

23   lead you through it, and everything like that.  Um, you know,

24   but it makes it hard for the Government to object when you

25   are in kind of a narrative.  And it's not good for the

1    Government, it's probably not good for you, because if they

2    object, I sustain your objection, then the only remedy I

3    would have is to strike your testimony as to that issue.  And

4    that would not be good for you.

5         So you see what I'm talking about?

6         MR. DEBEVC:  I understand.

7         THE COURT: Do you think you can do kind of an

8    outline of what the issues are, give it to the Government?

9    And the good news and the bad news about my ruling is you get

10   to go second, so you get to think about what you need to talk

11   about and what areas that you need to talk about, okay?  And

12   then I can decide whether, you know, this is my testimony as

13   to this issue, and do it on a narrative, or do it on a

14   question and answer basis.

15        MR. DEBEVC:  Understood.  So I'll try to prepare an

16   outline and I'll share that.

17        THE COURT:  How does that sound, Mr. Clukey?  That's

18   one step at a time.

19        MR. CLUKEY:  That sounds like a good first step,

20   Your Honor.

21        THE COURT:  It may be that you get to do a narrative

22   on certain issues and maybe you have to ask yourself

23   questions, and I'll explain to the jury that this is because

24   you are your own lawyer.  It seems a little awkward, but this

25   is the only way we can do it, to be consistent with

1      everything else in the trial, because everyone else is

2      answering questions by a lawyer, okay?

3                MR. DEBEVC:  Understood.

4                MR. CLUKEY:  Thank you, Your Honor.

5                Then materiality and falsity, we believe that those

6      issues were addressed indirectly by virtue of your summary

7      judgment ruling.  And so we also put that in your pretrial

8      brief.

9                We believe that the ruling that the entire program

10     wasn't a loan, and obviously, the entire program was being

11     held out as a loan, not a sale, that that would be material.

12     It's also in our jury instructions, as well.

13               THE COURT:  Materiality and what?

14               MR. CLUKEY:  Falsity, which we think is a

15     necessary -- so there was sort of a necessary implication of

16     the fact that they said it was a loan, and in fact, it was a

17     sale, tax laws.

18               And then also the plan, that this was a plan.

19     That's one of the elements that it has to be a tax, you know,

20     falsity in connection with the promotion of a plan.

21               THE COURT:  All right.  Is it -- Mr. Cooper, is it

22     an issue as to planned materiality and falsity?  Falsity I

23     understand probably is.

24               MR. COOPER:  Falsity is definitely an issue.  I

25     mean, you ruled that it's the law of the case.  But

1    obviously, we are going to look to when the ruling was made

2    and what other law is out there on the issue.

3            So even though you ruled, we respectfully disagree,

4    obviously, but it is the law of the case, so we have an issue

5    with that.

6            THE COURT:  Okay.  Materiality?

7            MR. COOPER:  Materiality, I think they would have to

8    prove that that advice was material of the decision.

9            Because as Mr. Debevc I'm sure will testify, a lot

10   of these folks for a lot of other reasons, buying insurance,

11   simply diversification, so the tax aspect may not always be

12   material.

13           As far as there being a plan of arrangement, there

14   is one.

15           THE COURT:  So there is no issue as to plan, so you

16   don't have to worry about proving plan.

17           MR. CLUKEY:  Your Honor, just for materiality.

18           MR. COOPER:  In fact, we would almost be willing to

19   concede the first part of the Statute that Mr. Nagy

20   participated in it and keep the issue focused on whether his

21   tax advice was false or fraudulent, because that's what it

22   boils down to.

23           MR. CLUKEY:  Participation, Your Honor, what he's

24   trying to do is eliminate circumstantial evidence.  That goes

25   to whether he knew or had reason to know.  So we would

1     stipulate to that.

2             THE COURT:  It takes two to stipulate.  So that's

3     all right.

4             MR. CLUKEY:  We've got a quote here, and this is

5     from our pretrial brief, to prove materiality, quote, "the

6     Government need not demonstrate that a purchasing taxpayer

7     has relied upon the purported misrepresentation."  That's

8     *U.S. vs. Ratfield*.

9             And then we also have whether a scheme's customers

10    used this misinformation to violate the tax laws.

11            THE COURT:  What page of your pretrial brief?

12            MR. CLUKEY:  Page 12.

13            THE COURT:  All right.  I just wanted --

14            MR. CLUKEY:  So then, "Thus, further the scheme's

15    customers use that information to violate the law is

16    irrelevant, and Congress intentionally omitted taxpayer

17    reliances as an element of the offense."

18            That's *Estate Preservation Services,* the leading

19    case on 6700.

20            THE COURT:  Okay.  So assuming that I buy your

21    argument that I've already decided materiality, falsity and

22    plan is not an issue, what do you propose to do?

23            MR. CLUKEY:  We don't have to prove those elements

24    at trial, so --

25            THE COURT:  How is the jury going to figure that

1    out?

2              MR. CLUKEY:  Well --

3              THE COURT:  It's part of the charge.

4              MR. CLUKEY:  Hopefully through the jury

5    instructions.  We would like to be able to mention it at

6    trial, as well.

7              THE COURT:  All right.  You propose that if I buy

8    your argument that the closing instructions will be the

9    Government has to prove the following elements, one of the

10   elements, materiality, the Court has already determined that

11   these statements were material, the Court has determined that

12   this is a plan, the Court has determined that this was false

13   in the jury instructions as opposed to at trial?

14             MR. CLUKEY:  Yes, Your Honor.

15             THE COURT:  Okay.  It's not preventing you from

16   saying it in opening statement or anything else.

17             MR. CLUKEY:  Yeah.

18             THE COURT:  Okay.  I'll look at page 12 again,

19   because I can let you know tomorrow if you are coming back in

20   here.

21             MR. CLUKEY:  Thank you, Your Honor.

22             And there is actually, if it's okay, I would like to

23   brief one exhibit today.

24             THE COURT:  Sure.

25             MR. CLUKEY:  There is a McDermott Will & Emery

```
 1        opinion that we believe is rank hearsay, and --
 2                  THE COURT:  As opposed to regular hearsay?
 3                  MR. CLUKEY:  Thank you, Your Honor.
 4                  THE COURT:  As opposed to not smelly hearsay, as
 5        opposed to rank hearsay?
 6                  MR. CLUKEY:  It's an opinion, a tax opinion that was
 7        not prepared for Derivium, it was prepared for others, and
 8        Derivium somehow got a copy of it.  And it pertains to a
 9        different scheme.  I mean, it looks like -- it's like a
10        similar scheme.
11                  THE COURT:  Um-hum.
12                  MR. CLUKEY:  But Derivium didn't get anything from
13        McDermott Will & Emery on anything.  I've actually got
14        evidence that will be introduced at trial on that.
15                  And that actually, Mr. Debevc and Mr. Nagy both
16        admitted in depositions that McDermott did not give Derivium
17        a legal opinion saying that this scheme is okay.
18                  So we want to avoid any mention of that in the
19        opening in particular.
20                  THE COURT:  Okay.
21                  Yeah?
22                  MR. COOPER:  Well, it is a tax opinion, and it goes
23        directly to Mr. Nagy's state of mind.  It was written by a
24        large law firm.  He received it from his client.  He kept it
25        in the ordinary course of business, and it goes to what he
```

1    believed the basis of advice was correct.

2            THE COURT:  Okay.  How about give me a copy of it?

3    You don't have to do it today, you can give it to me -- fax

4    it or e-mail it to Frank or something like that, okay?

5            And if I understand Mr. Cooper correctly, what you

6    are going to do is, is going to through Mr. Nagy, say, I had

7    this opinion from McDermott Will & Emery, and they weren't

8    our lawyers, but I had this opinion from them, and it said

9    that some -- it doesn't mention the Derivium scheme, does it?

10            MR. COOPER:  It mentions a 90% Stock Loan

11    transaction that was sold by a qualified advisor that did

12    sell Derivium stock loan.  He just rebranded it as something

13    called stock to cash and --

14            MR. CLUKEY:  Your Honor, that's --

15            MR. COOPER:  Can I finish?

16            That the front of it is a Derivium memo letterhead

17    from David Lancaster, who was the marketing person for

18    Derivium, to Mr. Nagy, and he received it in the ordinary

19    course -- it was in his business files.

20            THE COURT:  Okay.  What year?

21            MR. COOPER:  2001, Your Honor, before the IRS audit.

22            THE COURT:  And what -- what year is -- are his

23    opinions, which are 39 to 51, I believe you all said earlier.

24            MR. COOPER:  His opinions on the 90% started

25    December of 1998.  They think it's '97.  We say '98

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

1    through -- I think his last opinion was that January '05

2    opinion.

3          So it was given to him during right before the IRS

4    audit when he was -- because what happened is he started

5    offering opinions from '98 to 2002 and he was pretty active

6    and then he stopped.

7          And then during the California Franchise Tax Board

8    investigation, he wrote defensive opinions.  So they were

9    just sort of regurgitations of what was going on.

10         So it was definitely something -- what he was

11   writing at the time, he was looking at it and comparing what

12   his basis was, as compared to what other lawyers were doing.

13         MR. CLUKEY:  Your Honor, the -- I'm sorry for

14   interrupting.

15         The cover page that Mr. Cooper just referenced is

16   simply a cover page, not from McDermott to Derivium, it's

17   from one of the marketing people at Derivium.  It's

18   somehow -- it's not a cover page, it's a separate document.

19         THE COURT:  That's what he said, it was from Mr.

20   Lancaster.

21         MR. CLUKEY:  Right.

22         So McDermott communicated nothing to Derivium.

23         So in order -- and actually -- right.  So we have --

24   so in addition to hearsay, we also have an authentication

25   objection to the document.  There is no indication at how

1     anybody got this, how Mr. Lancaster got it.  There has been

2     no testimony from anybody at McDermott about this -- about

3     this document.  And from the face of the document itself, the

4     information that Mr. Cooper just said about how it's a

5     spinoff, none of that information is inherent.

6          THE COURT:  Why don't y'all just e-mail it tonight

7     and I'll take a look at it and we'll talk about it tomorrow.

8          MR. CLUKEY:  Thank you, Your Honor.

9          THE COURT:  All right.  Anything else we can clear

10    up this afternoon besides -- I'm getting ready --

11         MS. WEIS:  Your Honor, we had one other question for

12    you about deposition transcripts and objections --

13         THE COURT:  Yeah.

14         MS. WEIS:  -- for the witnesses that we'll be

15    presenting by video testimony, because we need to cut those,

16    you know, sort of cut out the clips and know what testimony

17    is going to be admissible and not well in advance, is it

18    possible to submit the transcripts to you and get a ruling

19    maybe a day before we plan to put on that testimony?

20         THE COURT:  If you give me the transcripts, what

21    I'll do is I'll highlight what the objections are, what

22    you -- what I usually do -- and it's worked pretty well

23    before -- is I'll go through and I'll look at it and then

24    I'll just, you know, in writing, I'll just say, sustained or

25    overruled, and all that kind of stuff, and give them back to

1      you and you edit it.

2                And does anybody have a problem with you doing it

3      that way?

4                MR. COOPER:  No, Your Honor.

5                MR. CLUKEY:  No.

6                THE COURT:  So if you don't mind, if you can give

7      those to me tomorrow sometime.  I mean, you know, it's too

8      hot to be outside.  I'll just read them over the weekend.

9                MR. DEBEVC:  Your Honor, just so I understand, so

10     you need copies of the deposition transcripts that we want to

11     use and highlight the passages?

12               MS. WEIS:  Actually, Your Honor, we've already

13     prepared those and have provided copies of those to the other

14     side and we'll provide copies to the Court tomorrow.

15               THE COURT:  And the same thing goes for y'all.

16     Y'all will probably be going until next weekend, so you can

17     give me what yours are and highlight the objections, and then

18     I'll -- and then I'll just write on them and sustain or

19     overrule it.  We can do that in regular -- in the regular

20     depositions, too.  And I can read them a lot faster than

21     y'all can read them out loud, okay?

22               MR. CLUKEY:  Thank you.

23               THE COURT:  So just give me a copy of everything

24     with objections, and I can go through and make the rulings.

25               MR. CLUKEY:  Great.

1          One last thing, Your Honor.  We also submitted and

2     put in our proposed jury instructions a set of facts that we

3     believe the Court already ruled on in connection with summary

4     judgment.  And perhaps this may be covered tomorrow, just

5     those facts, whether they were, in fact, already established

6     through summary judgment.

7          MS. WEIS:  They are also in our proposed preliminary

8     instruction.

9          THE COURT:  Okay.  So we'll take a look at that.

10         Okay.  All right.  Anything else, Mr. Cooper?

11         Mr. Debevc?

12         MR. DEBEVC:  Not at this time, sir.

13         THE COURT:  Okay.  Thank you.

14         All right.  What we heard this afternoon, the Motion

15    to Bifurcate I'm going to deny.  From what the Government has

16    told me we have 16 witnesses that are common; one witness

17    that is not common.

18         I'll -- when the not common witness, the one that's

19    just going to testify in your case against Mr. Debevc,

20    regarding Mr. Debevc, as opposed to against Mr. Debevc, you

21    know, I'll charge the jury that this testimony right now is

22    to be considered against in Mr. Debevc's case and only Mr.

23    Debevc's case, it is not to be considered in any way against

24    Mr. Nagy, okay?  Or if you want to submit some sort of

25    limiting instruction, I'll be glad to take a look at it.

1          All right.  I'm going to deny the Motion to Strike

2     Mr. Cohen.  He's going to be a summary witness, as opposed to

3     an expert.  He's not going to be placed as an expert witness.

4     I'll allow him to testify as a summary witness.

5          I'm going to grant the Motion in Limine about John

6     Kern.  I mean, there is no identification with the July

7     cutoff, he wasn't announced to the jury as a possible

8     witness, um, the cutoffs were extended by the parties over

9     and over again, which I always approve.  The cutoff was last

10    July.  He was identified on May the 20th.  It's too late.

11         Now, I'm going to allow the issue of Mr. Nagy's

12    failure to file into evidence under 404(b) as to intent.  I

13    mean, the Government has got to prove scienter of a lack of

14    mistake.  It's, under 403, the probative value is not greatly

15    outweighed by unfair prejudice, and that's the standard.

16         Now, how are you -- I mean, did you ask him that in

17    his deposition?  Are you going to read his deposition?  I

18    mean, I don't see why you need to bring up Mr. Gee to testify

19    that he didn't file it.  He probably admitted it.

20         MR. CLUKEY:  If he admits it, then we -- Mr. Gee is

21    in rebuttal, if necessary.  If he admits it, we are done.

22         THE COURT:  So I will deny without prejudice the

23    Motion to Strike Mr. Gee as a reply witness, okay?

24         When it comes -- when we get through the trial, if

25    in fact you want to reiterate that motion, I'll consider it

1    at the time when I've got a better idea as to, you know, as

2    to what he's going to reply to, and you will have time, and

3    then we'll know not in theory but in fact what the issues

4    are, okay?

5            All right.  Is there anything else that I haven't

6    ruled on that you need a ruling?

7            All right.  Do y'all want to come back here at 10:30

8    or 11:00 tomorrow morning?

9            MR. CLUKEY:  Yes, Your Honor.

10           THE COURT:  I mean, I'm available.  So y'all get

11   together, and you have some things that will help you with

12   your opening statement, as opposed to, you know, some

13   documents that you think you ought to get in, I can try to

14   rule on them tomorrow, so you can use them over the weekend

15   to prepare your opening, okay?  All right.

16           MR. COOPER:  Thank you.

17           THE COURT:  Opening.  Who is -- have y'all decided

18   who is going to go first and who is going to be second?

19           MR. COOPER:  Well, I mean, obviously I would like to

20   go first.

21           THE COURT:  I think you are -- the first is the

22   lowest number anyway.  Do you have any problem with him going

23   first, Mr. Debevc?

24           MR. DEBEVC:  No, Your Honor.

25           THE COURT:  If y'all agree on it, that's fine with

1    me, all right?

2          All right.  I don't have any limitations.  I do have

3    limitations, direct, cross, redirect, recross, over, okay?

4    So there is no reredirect and rerecross.  So you know, it

5    cuts both ways.

6          Please spend some time and try to mark everything

7    into evidence that you can agree on being into evidence, and

8    go ahead and mark it into evidence, and then you don't have

9    to identify -- if it's in evidence, you can use it without

10   even mentioning it.  If y'all agree it's in evidence, you can

11   use it in your opening, you don't have to identify them when

12   it comes to the witness and it makes things go a lot faster.

13         All right.  Yeah?

14         MR. CLUKEY:  Sorry.  Also in our pretrial brief,

15   since John Douglas is no longer in the case, we were

16   wondering if it would be possible to give just one person,

17   one government counsel ECF filing privileges.

18         THE COURT:  Gail, how about that?

19         THE CLERK:  I can get in touch with Columbia and see

20   if they can do that.

21         THE COURT:  Why don't you get in touch with Columbia

22   and tell them to do that?

23         THE CLERK:  Tell them.  I will.

24         THE COURT:  All right.  Anything else?

25         Okay.  All right.  I'll see y'all at quarter to 11

1    tomorrow morning.  And if you -- if you decide that you don't

2    need to see me, let me know and I'll take the afternoon off.

3    If not, I'll be here.

4

5

6

7                        *****     *****     *****

8

9    I certify that the foregoing is a correct transcript from the

10   record of proceedings in the above-titled matter.

11

12

13

14   ---------------------------

15

16   Amy C. Diaz, RPR, CRR               February 21, 2011

17

18   S/  Amy Diaz

19

20

21

22

23

24

25